

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN, TEXAS 78711

WAGGONER CARR
ATTORNEY GENERAL

February 7, 1966

Honorable Doug Crouch
District Attorney
Tarrant County
Fort Worth, Texas

Opinion No. C-599

Re: Enforcement of a support
order under the new Texas
Uniform Reciprocal En-
forcement of Support Act
for an out-of-state
plaintiff originally re-
ceiving the support order
ancillary to a Texas
divorce decree.

Dear Mr. Crouch:

In your request for an official opinion on the above
captioned matter you have submitted facts which we summarize
as follows:

Plaintiff received a divorce in a Texas Court and a
support order for her children ancillary thereto. She and
the children then moved outside of the State of Texas. The
defendant has not contributed to the support of the children
as he was ordered to do. He has moved from the county where
the divorce was entered and into Tarrant County. Plaintiff
has initiated suit in the state where she now resides under
a reciprocal enforcement of support act provided by the laws
of said state. Her petition has been certified by a judge
of said state and has been sent to Tarrant County to be sued
on for enforcement.

You have inquired as to whether in our opinion, a
suit for enforcement of a support order properly may be
brought in Tarrant County, under the new Texas Uniform Re-
ciprocal Enforcement of Support Act.

House Bill 138 (Acts of the 59th Legislature, 1965,
Ch. 679, p. 1561) repealed Articles 2328b-1, 2328b-2, and
2328b-3 while simultaneously enacting Article 2328b-4,
Vernon's Civil Statutes. The Texas Uniform Reciprocal En-
forcement of Support Act contained in the repealed Articles
will be hereinafter referred to, where convenient, as the
old act, while that act enacted by the 59th Legislature,
Article 2328b-4, Vernon's Civil Statutes, will be herein-
after referred to, where convenient, as the new act.

An identical fact situation to the one you present was passed on under the old act (Articles 2328b-1, 2328b-2, and 2328b-3, Vernon's Civil Statutes) in the case of Freeland v. Freeland, 313 S.W.2d 943 (Tex.Civ.App. 1958). The court held in Freeland that the only proper Texas court to enforce a support order issued ancillary to a Texas divorce was the court entering it originally.

There is no provision under the new act and there was no provision under the old act which specifically provides for the proper court for an enforcement suit to be tried under the facts submitted by you.

> ". . .When necessary to a correct under-standing and interpretation of a statute, the court will take into consideration the state of the law at the time of its enactment, the conditions designed to be dealt with, the good intended to be accomplished, and the mischief sought to be prevented or remedied. Further-more the subject matter of the enactment and the necessity or reason for it are also proper subjects of judicial consideration." 53 Tex. Jur.2d 236, Statutes, 3162.

A complete discussion of the state of the law per-taining to enforcement of support orders within the State of Texas prior to and at the time of the adoption of the old act is contained in Attorney General Opinion WW-784 (1960), Any contempt proceeding for the enforcement of a support order was ancillary to the original order and exclusive jurisdiction to enforce it remained with the court that en-tered the original order, one court being without authority to punish contempts of another court. Ex parte Gonzalez, 111 Tex. 399, 238 S.W. 635 (1922); Putty v. Faulkner, 214 S.W.2d 831 (Tex.Civ.App. 1948, no writ history); Hunt v. Boyd, 193 S.W.2d 970 (Tex.Civ.App. 1946, no writ history); Johns v. Johns, 172 S.W.2d 770 (Tex.Civ.App. 1943, no writ history). Prior to the adoption of the old act, the courts were in com-plete agreement in stating that since a support order was of an interlocutory nature, only the original district court had jurisdiction to amend, change or modify it. Ex parte Goldsmith, 155 Tex. 605, 290 S.W.2d 502 (1956); Ex parte Roberts, 139 Tex. 644, 165 S.W.2d 83 (1942); Armstrong v. Armstrong, 295 S.W.2d 542 (Tex.Civ.App. 1956, no writ history); see Johns v. Johns, supra.

The old act was adopted as one law in a systematic enactment of similar state laws based upon the Uniform

Reciprocal Enforcement of Support Act recommended by the National Conference of Commissioners on Uniform State Laws and by the American Bar Association in their annual conferences at Washington, D. C. in September, 1950. The conditions designed to be dealt with by such laws, the good intended to be accomplished, and the mischief sought to be prevented or remedied thereby may be ascertained by reference to the Commissioners' Prefatory Note to the Act. Handbook of Commissioners on Uniform State Laws (1950) p. 171.

The Commissioners set forth the problems making desirable the proposed statute, in part, as follows:

"With the increasing mobility of the American population the problem of interstate enforcement of duties of support became acute. A deserting husband was beyond the reach of process in the state where he had abandoned his family and the family had no means to follow him. Welfare departments saddled with the burden of supporting destitute families were often prevented from enforcing the duty of support in the state where the husband could be found by decisions holding that the duty existed only as to obligees within the state.

"The avenue of criminal enforcement was not more fruitful. Charges could be preferred against the fleeing husband but he had to be returned for trial to the state where the offense was committed. Extradition was both expensive and narrowly technical, and it was often impossible to prove that he had 'fled from justice' for frequently he supported his family until he left the state and only left in order to get a job. Even if he were brought back and successfully prosecuted the result was disappointing. The proceedings rendered reconciliation with the family improbable, took him away from his job in the state to which he had fled, and by branding him a convicted criminal lessened the probabilities of gainful employment in the home state.

"...

"The 1950 Act, printed hereafter, attempts to improve and extend by reciprocal legislation the enforcement of duties of support through both the

criminal and the civil law. <u>Its provisions are</u>
<u>in addition to remedies now existing for the</u>
<u>enforcement of duties of support within the state.</u>
<u>Each state will enforce its own laws as before so</u>
<u>long as the husband remains in the state,</u> and the
new act is meant to improve enforcement where the
parties are in different states." (Emphasis
supplied.)

The crux of the Uniform Act and, in turn, the Texas
Acts which were to be patterned thereon, was the two state
enforcement procedure. Such procedure was described as
follows in the Commissioners' Prefatory Note to the 1950
Uniform Act, citation supra page 173. (We have added in the
parenthesis, citations to the old and new Texas Acts along-
side the Commissioners' Citations to the 1950 Model Uniform
Act.)

". . . .In the past, the greatest difficulty
in enforcing support where the parties are in
different states has been the expense of travel
to a distant state to litigate the rights of the
destitute obligee. Under this Act this expense
can be reduced to filing fees plus a few postage
stamps. In a nutshell, this two-state proceeding
is as follows: It opens with an action (Section
9 of all three acts) which normally will be com-
menced in the state where the family has been
deserted (the initiating state). A very simplified
petition is filed (Section 10 of both the model
act and of Article 2328b-3 of the old Texas Act;
Section 11 of the new Texas Act), The judge looks
it over to decide whether the facts show the exis-
tence of a duty of support and if they do he sends
the petition and a copy of this Act to a court of
the responding state to which the husband has fled
or in which he has property (Section 11 of the
model act and of Article 2328b-3 of the old Texas
Act; Section 14 in the new Texas Act). That Court
will take the steps necessary to obtain jurisdiction
of the husband or his property, will hold a hearing
(Section 12 of the model act and of Article 2328b-3
of the old Texas Act; Sections 18 and 19 in the new
Texas Act - prosecuting attorney now given respon-
sibility for taking action to give court jurisdic-
tion with court overseeing and if jurisdiction cannot
be had where petition is received, the petition may
be forwarded to another court under Section 19(b)
of the new act), and if the court finds that a duty

of support exists, it may order the defendant
to furnish support (Section 13 of the model act
and of Article 2328b-3 of the old Texas Act;
Section 23 of the new act), and will transmit
a copy of its order to the court in the initiating
state (Section 14 of the model act and of Arti-
cle 2328b-3 of the old Texas Act; Section 24 of the
new act). To enforce compliance with its orders
the court may subject the defendant to such terms
and conditions as it may deem proper, may require
him to furnish bond or make periodic payments or,
in case of refusal, may punish him for contempt
(Section 15 of the model act and of Article 2328b-3
of the old Texas Act; Section 25 of the new Act).
It has the duty to transmit to the initiating
court any payments it received and upon request
to furnish a certified statement of those pay-
ments (Section 16 of the model act and of Article
2328b-3 of the old Texas Act; Section 26 of the
new Act). The initiating court must receive and
disburse these payments (Section 17 of the model
act and of Article 2328b-3 of the old Texas Act;
Section 27 of the new Act).

"This simple two-state procedure can be
carried out with a minimum of expense to the
family or the state - the usual court costs and
postage for the transmission of papers and
money. Yet it preserves due process, for each
party pleads in his own court. Provisions
covering other details of procedure have been
kept out of the Act so that the usual rules
for obtaining jurisdiction for carrying on the
procedure and for appeals may be held to govern."

The Commissioners' Conference on Uniform State Laws
and the American Bar Association adopted amendments to the
model Uniform Act in 1952. We do not think it necessary to
refer to such amendments in this opinion although they might
be useful in throwing light on other problems which might
arise under the new Texas act.

To summarize briefly: the conditions designed to be
dealt with, the good intended to be accomplished and the
mischief sought to be prevented or remedied by laws based
closely on the model act - were as follows:

The model act was designed to provide an
economical means for enforcing support orders

against deserting husbands or husbands who crossed state lines leaving destitute families behind them. No change under the model act was intended with regard to husbands or ex-husbands remaining in the state.

The old act followed closely the 1950 Model Uniform Act in the above respects.

When the trial court in the Freeland Case, supra, was presented with a petition for enforcement under the old act against an ex-husband who remained within the State of Texas by a plaintiff who had crossed state lines, the Court of Civil Appeals was faced with a situation unprovided for under the Act and was required to determine to what extent, if any, the Act was applicable.

On the one hand, it was clear that the old act purported to make no change in internal state law - that one Texas court was without any authority to punish contempts of another Texas court. Attorney General's Opinion WW-784 (1960) and authority referred to therein, as heretofore cited.

On the other hand, plaintiff was certainly in a predicament analogous to that which the Act was primarily designed to deal with insofar as the enforcement problems presented.

A curative or remedial statute is generally to be given the most comprehensive and liberal construction possible, and certainly should not be given a narrow technical construction that would defeat the very purpose for which the statute was enacted. Mason v. West Texas Utilities Company, 150 Tex. 18, 237 S.W.2d 273 (1951); 53 Tex.Jur.2d 303, Stat. §197.

The court resolved the question of the applicability of the Act by allowing the plaintiff to sue with the aid of the economical procedures provided by the Act, at the same time leaving in effect internal state law by restricting jurisdiction to act on the plaintiff's petition to the Texas court entering the support order.

The old act contained substantially identical language with regard to suits for enforcement of support orders under the out-of-state petitions as does the new act. (Parallel citations set forth, supra.) Freeland held that the plaintiff was limited to enforcement by the court entering the original order in spite of such language. However, the new act, unlike the old act, is clearly to be given intrastate

effect. Section 31 of the new act, Article 2328b-4, Vernon's Civil Statutes, provides in part:

> "This Act is applicable when both the Plaintiff and the Defendant are in this State but in different judicial districts."

While the plaintiff in the instant case does not reside within the State and thus Section 31, Article 2328b-4, cannot give the Tarrant County Court jurisdiction over her petition, there is nothing in the new act which would prevent the petition from being treated simply as any other petition under the new act from an out-of-state plaintiff (without regard to any presumed distinction arising from her having received her divorce and the support order ancillary thereto within the State of Texas). Such a treatment is consistent with policy of the Legislature under the new act.

We are well aware of the rule of construction of statutes which provides that where an Act of the Legislature has been construed by the courts and such act is re-enacted by the Legislature in similar language, without substantial or material change, it is presumed that the Legislature was aware of such interpretation and intended that it should be applied to the new Act. On the other hand, where such prior Act has been re-enacted by the Legislature with substantial and material changes there is no such presumption. Bellinger v. Schutte, 244 S.W.2d 261, 263 (Tex.Civ.App. 1951).

There is in our opinion substantial difference between an act which is only intended to be operable when one of the parties is outside the State and an act providing for intrastate operation by its clear terms. Obviously, a court could not construe an act as having intrastate operation before the Legislature so provided.

Under the old act, had the Freeland decision been otherwise, a plaintiff could have received more flexible enforcement of support through moving outside of the State of Texas than was then provided to Texas plaintiffs. Conversely the application of the Freeland holding under the new act would deprive a plaintiff under these facts of the rights now given to Texas plaintiffs.

It would be highly frivilous to attribute to the Legislature the purpose of making an enforcement procedure unavailable in all cases where a plaintiff moves out-of-state after receiving a support order ancillary to a Texas divorce, while at the same time making such procedure available in all other instances.

We can find no basis for making the plaintiffs and the defendants, under these circumstances, members of a special class to be denied the conveniences now provided to all other plaintiffs and defendants under the new Act.

Both the plaintiffs and the defendants who have had no prior connection with the State with regard to support orders - and also those plaintiffs and defendants divorced by a Texas court with a support order issued ancillary to such divorce (in instances where the plaintiff continues to reside within the State) are provided under the new act with a procedure whereby the support order may be conveniently enforced in defendant's home county.

The convenience of being sued in one's home county is considered of sufficient importance under Texas law that a defendant can, except in the cases outlined in Article 1995, Vernon's Civil Statutes, have venue placed therein as a matter of right. While under the new Act, defendant could not have venue transferred from the Texas court originally entering the support order to his home county - if such transfer of the action occurs, it is not realistic to assume that he is prejudiced thereby. Such could be argued under the old act in the Freeland case, supra, at page 946:

> "Appellant in this case might well find himself hopelessly impaled on the horns of dilemma if the order of the Dallas Court is permitted to stand. If he were to pay the $25 per week to the Collector of Child Support of Tarrant County, as ordered by the Tarrant County Court he could be held in contempt by the Dallas Count for his failure to obey its order to make the payments to the Juvenile Court of Dallas County. On the other hand, if he were to make the payments to the Juvenile Court of Dallas County, he could be held in contempt by the Court in Tarrant County for disobeying its order."

The dilemma projected in Freeland is not a possibility under the new act, Section 29 (applicable to intrastate enforcement of petitions through Section 31) provides in part:

> ". . .the amounts for a particular period paid pursuant to either order shall be credited against . . . both." (Emphasis supplied)

The Texas court entering a support order originally

retains jurisdiction to enforce the order under Texas law, but, as a practical matter, it has no compelling interest in enforcing the order after both the obligees and the obligor have physically left its jurisdictional boundaries. The burden of non-support then falls elsewhere. Thus, the new act allows its order to be enforced elsewhere within the State.

You are advised that a restriction against intrastate enforcement of a Texas Support order under the submitted facts is inconsistent with the policy otherwise set forth under the new act. The petition which you have received should be processed for enforcement as any other petition for support presented to your office by a plaintiff through an out-of-state court under the new Texas Uniform Reciprocal Enforcement of Support Act.

### SUMMARY

A petition for enforcement of a support order under the new Texas Uniform Reciprocal Enforcement of Support Act from an out-of-state plaintiff originally receiving the support order, ancillary to a Texas divorce decree, should be treated the same as a petition received under the Act from an out-of-state plaintiff. There is no exception within Article 2328b-4, V.C.S., to the general rule that an action thereunder may be enforced against a defendant by any Texas district court that may locate defendant or his property within its jurisdictional boundaries. There is no reason for a court to wish to engraft such an exception on Article 2328b-4 as was engrafted in the case of Freeland v. Freeland on the repealed Articles 2328b-1, 2328b-2, 2328b-3, V.C.S.. Under the repealed Articles, a Texas plaintiff could have her support order enforced only by the Texas court entering the order. This is not true under Article 2328b-4.

Yours very truly,

WAGGONER CARR
Attorney General of Texas

By: LARRY CRADDOCK
Assistant Attorney General

"Hon. Doug Crouch, page 10 (C-599)."


LC:cm

**APPROVED:**
OPINION COMMITTEE

W. V. Geppert, **Chairman**
John Banks
John Reeves
Robert Owen
Douglas Chilton

APPROVED **FOR THE** ATTORNEY GENERAL
By:   T. B. Wright

"Hon. Doug Crouch, page 10 (C-599)."